CADDO TRANSFER & WAREHOUSE COMPANY *v.* PERRY.

## Opinion delivered October 10, 1927.

1. CARRIERS—SUFFICIENCY OF EVIDENCE.—In an action for damages for personal injuries sustained while riding as passenger in an automobile, evidence *held* to warrant the jury's finding that defendant bus company's agent procured or furnished the car in which plaintiff was riding when injured, and that he was riding as a passenger at the time of his injuries.

2. CARRIERS—NEGLIGENCE IN OPERATING AUTOMOBILE.—In an action for personal injuries sustained in an automobile accident, the evidence showing that defendant's automobile, in which plaintiff was riding as a passenger, had poor headlights and was traveling about 30 miles an hour down hill in the night time when it ran into the trailer of a truck carrying iron pipe, *held* to warrant the jury in finding that defendant was negligent in the operation of its car at the time plaintiff was injured.

3. DAMAGES—PERSONAL INJURIES.—In an action for personal injuries sustained in an automobile accident, a verdict of $1,500 damages *held* not excessive, where plaintiff's arm was broken and he suffered severe pain for several weeks thereafter, and, though his arm knit together properly, his physician testified that a man of his age was likely to suffer pain during the remainder of his life during cloudy or bad weather.

4. TRIAL—ADMISSIBILITY OF EVIDENCE.—In an action for injuries sustained while plaintiff was riding in defendant's automobile, plaintiff's testimony that one of defendant's cars had "bonded" or "insurance" on it, admitted on cross-examination, while defendant's counsel was questioning plaintiff about the description of one of defendant's cars, *held* not error.

5. APPEAL AND ERROR—EVIDENCE NOT OBJECTED TO.—Where a party made no objection to the introduction of testimony, no assignment of error can be based on its admission.

Appeal from Ouachita Circuit Court, Second Division; *W. A. Speer,* Judge; affirmed.

### STATEMENT OF FACTS.

A. J. Perry sued the Caddo Transfer & Warehouse Company to recover damages for injuries received on account of the negligent acts of the defendant while he was riding in one of its automobiles. The injuries occurred on June 30, 1926, while the plaintiff was riding in a Ford touring car from Smackover, Arkansas, to Camden, Arkansas. The car in which the plaintiff was

riding ran into a Ford truck with a trailer attached to it, carrying iron pipe. There were three Ford trucks with trailers carrying iron pipe, traveling one in front of another. At the time the accident occurred, the driver of the Ford car in which the plaintiff was riding was going down hill at the rate of thirty miles an hour, and the plaintiff had warned the driver that he was going too fast. The car in which the plaintiff was riding ran into the trailer of the rear truck carrying the iron pipe, and was turned over. The lights on the car in which the plaintiff was riding were bad, and that was one of the reasons he asked the driver not to go so fast. The accident occurred in the night time, and the plaintiff's arm was broken. It was admitted that the Tri-State Transfer Company was the trade name of the Caddo Transfer & Warehouse Company.

Jesse F. Nash was a witness for the plaintiff. According to his testimony, on the day in question he purchased a ticket at El Dorado, Arkansas, to Camden, Arkansas, from the Caddo Transfer & Warehouse Company, known as the Tri-State Company. The ticket was purchased at its office in El Dorado, and that company carried him with other passengers from that city to Smackover in a Hudson automobile. When they arrived at the station in Smackover, where the Tri-State Company unloaded passengers, the driver of the car told Nash that he could not go any further with the car, and offered him his money back. Nash was advised to get another means of conveyance from Smackover to Camden. Nash refused to take his money back, and insisted on being carried on to Camden. Finally the man in charge of the station secured a Ford touring car with which to carry Nash to Camden, and Nash was not charged any additional fare. A. J. Perry was also a passenger in the car. The man in charge of the station, who procured the Ford touring car for the witness and Perry, cautioned the driver of it about driving past other cars.

According to the testimony of A. J. Perry, he was 58 years old at the time of the accident, and had lived

ten miles southeast of Camden all his life.   He had been county surveyor of Ouachita County for the past twenty years.   He was in Smackover on business, and, wishing to go home on the night in question, went to the station of the Tri-State Company for the purpose of securing passage home in one of its cars.   He saw a bus run into the station with "Tri-State" on it.   He then asked the man at the station who was calling out the runs if he could get transportation to Camden.   The man told him that he could at 7:45 P. M.   The bus did not come in at 7:45 P. M., but he waited until it did come in, about 8:30 P. M.   Mr. Nash, along with other passengers, got out, and Nash stopped by the side of Perry.   The latter asked Nash if the bus was going to Camden.   Nash said he did not know.   The driver of the bus then offered Nash his money back, saying that he had to make a turn-around trip.   Nash refused to accept the money, and said he had to go to Camden.   The bus driver had a talk with the man announcing the runs at the station, and, after a little while, the man came up to Nash and Perry and told them that he would have a car in a few minutes. Later he came back and told them that he had a car. Nash and Perry got in the car, and the man told the driver of it to be careful while passing other cars.   Perry bought his ticket from Smackover to Camden from the man calling out the runs at Smackover for the Tri-State Company and who was the man that procured the Ford touring car for Perry and Nash to go from Smackover to Camden.   He did not know that the man who furnished the car was the agent of the Tri-State Company, except that he was at the station where that company was required to load and unload its passengers at Smackover, and that, while there, he called out the runs of the Tri-State Company busses, and acted for it in procuring a car for Nash to go on from Smackover to Camden.

On the part of the defendant, witnesses were introduced who testified that Nash did not come from El Dorado to Smackover in one of its cars; that the car he came in was operated by another company, and that

the Tri-State Company was not interested in its operation. According to the testimony of other witnesses for the defendant, its agent did not procure or furnish the car in which Nash and Perry started from Smackover to Camden.

The jury returned a verdict in favor of the plaintiff in the sum of $1,500, and from the judgment rendered the defendant has duly prosecuted an appeal to this court.

*Oren Parmeter,* for appellant.

*Kirby & Hays* and *J. C. Clary,* for appellee.

HART, C. J., (after stating the facts). The main reliance of the defendant for a reversal of the judgment is that there is no substantial evidence to show that its agent procured or furnished the car in which the plaintiff was riding at the time he was injured. It claims that its evidence to the effect that the car did not belong to it is not disputed, and that there is no substantial evidence from which the jury was warranted in finding that the man who procured the car was its agent. We cannot agree with the defendant in this contention. The defendant was a corporation, and could only act through its agents. The evidence shows that, under a city ordinance, it was required to load and unload its passengers at a certain station in Smackover, and that it did so. According to the testimony of Nash, he came from El Dorado to Smackover in one of the defendant's cars and it unloaded its passengers at its station in Smackover. The driver of the bus said that he had unloaded the passengers there because he had to go back to El Dorado. Nash insisted on being carried to Camden, and refused to take back his fare. The driver of the bus then talked with the man at the station of the defendant in Smackover. He was the same man whom Perry had heard calling out the runs of the defendant. This man finally procured a Ford touring car, and sent Nash on in it to Camden. He also took a fare from Perry from Smackover to Camden, and told him to get in the car. From this evidence the jury might have legally inferred that

the man in charge of the station at Smackover, where the defendant loaded and unloaded its passengers, was the agent of the defendant and had the authority, or at least the apparent authority, to arrange to carry Nash and the plaintiff from Smackover to Camden. He was in charge of the defendant's business, and had at least the apparent authority to act for it in the premises. Hence we are of the opinion that the jury had a right to find that the plaintiff was riding in a car of the defendant as a passenger at the time he was injured. He had paid his fare to one who was in charge of the defendant's business at its Smackover station.

On the question of negligence, the testimony we have recited in our statement of facts warranted the jury in finding that the defendant was negligent in the operation of its car at the time the plaintiff was injured. It had poor headlights, and the jury might have found that the driver was guilty of negligence in driving in the night time too fast down hill while his lights were in such poor condition. Therefore we find that there was substantial evidence to support the verdict.

It is also claimed that the verdict is excessive. We do not agree with the defendant in this contention. The plaintiff's arm was broken, and he suffered severe pain for several weeks thereafter. While his arm knit together properly, his attending physician testified that a man of his age was likely to suffer pain during the remainder of his life, in cloudy or bad weather.

It is next insisted that the court erred in allowing the plaintiff to testify that one of the defendant's cars had "bonded" or "insurance" on it. There was no error in admitting this testimony. It was not admitted for the purpose of showing that the defendant had its cars insured, but it was admitted on cross-examination, while counsel for the defendant was questioning the plaintiff about the description of one of the defendant's cars. Under these circumstances it was not error to admit the testimony.

Another assignment of error is that the court erred in permitting Nash to testify to certain matters which are set out in the defendant's abstract and brief, but which we do not deem necessary to recite, because we find that no objection was made by the defendant to the introduction of this testimony, and, under our settled rules of practice, no assignment of error can be based upon its admission.

Again, the defendant assigns as error the action of the court in giving one of its instructions to the jury at the request of the plaintiff. We do not deem it necessary to set out this instruction, for the objection made to it is that there is no evidence to warrant a submission of the question of whether or not the plaintiff was a passenger of the defendant on the day he received his injury. As we have already pointed out, the evidence was sufficient to warrant a finding in favor of the plaintiff on this question, and we hold that this assignment of error is not well taken.

We find no reversible error in the record, and the judgment will therefore be affirmed.

KIRBY, J., disqualified.